23639. WINKLER et al. v. BURNS et al.

Argued September 14, 1966—Decided October 6, 1966.

*S. Jarvin Levison,* for appellants.

*Donald A. Weissman, Cohen, Kohler, Barnwell & Chambers, Troutman, Sams, Schroder & Lockerman, Harold C. McKenzie, Jr., John D. McLanahan,* for appellees.

Grice, Justice. We again assess against general demurrers a petition of former employees claiming violation of rights under a pension trust.

The former petition, filed by Ben Winkler and four others against Charles H. Burns, Fulton Industries, Inc., Bell Industries, Inc., and The Belsky Company, Inc., was held sufficient as against general demurrer by the Superior Court of Fulton County. However, this court in *Burns v. Winkler,* 221 Ga. 285 (144 SE2d 337), reversed.

Thereafter, the petition was redrafted into seven counts and was adjudged by the trial court to be subject to the general demurrers of the defendants, bringing about this appeal.

From the allegations of the pleading now under review the basic facts of this controversy are those which follow.

In 1953, Belsky, the employer of the plaintiffs, set up the pension trust now involved. The trust agreement stated that its

purpose was to encourage the employees to take an interest in the company and to continue their employment. Under its terms, which are only partially set forth, the employer was to contribute the full amount necessary to provide the benefits under the pension trust, the contribution for each employee to be determined by his salary. One-half of the contribution was to be used to defray the purchase of life insurance on the covered employees. This insurance was to provide a death benefit in the face amount of 100 times whatever monthly pension the employee would be entitled to upon retirement at 65 years of age. At that time it would be used for the purchase of a retirement annuity for such employee which would pay him 25 percent of his annual salary. The other one-half of the employer's contribution was to go into a separate investment fund to provide additional sums for purchase of the retirement annuity. The employees were required to pay an income tax on the portion of the company's contribution which was used to purchase the insurance.

In 1963 Belsky sold its assets whereby the defendant Bell assumed duties as employer under the trust agreement, with a guaranty by the defendant Fulton. The defendant Burns succeeded as trustee.

Late in 1963 plaintiffs and a number of other employees resigned.

The petition now before us seeks relief pertaining to the insurance and to the separate investment fund.

1. (a) Plaintiffs did not plead any right to relief as to the alleged underfunding of the trust insofar as the separate investment fund is concerned. Under the terms of the trust agreement any participant who ceases to be an employee for any cause other than death or retirement "shall have no rights whatsoever" with respect to the separate investment fund. Thus, the plaintiffs by their resignations forfeited any rights in that fund and can not now complain regarding it.

(b) Nor have the plaintiffs alleged any cause of action for pro rata shares of the separate investment fund, or damages, upon the ground that the trust has terminated. They maintain in counts 4, 5 and 7 that, for various stated causes, the trust

has terminated and the money in the fund must be distributed to the employees for whose benefit it was contributed. It is not necessary to determine whether the trust has terminated, since, even if it has, the plaintiffs are not entitled to any share of the separate investment fund for the same reason stated in Division 1 (a).

2. No breach of duty is alleged as to the conversion of the insurance contracts on the lives of the plaintiffs into paid-up contracts and the retention of such contracts by the pension committee. The averments in counts 2 and 3 as to discriminatory and retaliatory action in this respect are but an elaboration of allegations in the former petition, ruled adversely to plaintiffs in *Burns v. Winkler,* 221 Ga. 285, supra.

3. However, as to the alleged underfunding with reference to the insurance contracts, plaintiffs pleaded facts which, if proved, entitle them to recover for the failure of the defendants to provide life insurance with the specified death benefit of "100 times the amount of monthly pension which the employee is entitled to receive."

This complaint as to underfunding the insurance was a substantial addition to the petition since its evaluation here before.

Unlike the trust agreement's provisions respecting the separate investment fund, those relating to the insurance contracts do not divest a resigning employee of his rights therein. The trust agreement recites that upon termination of employment for any cause other than death or retirement, the pension committee in its sole discretion may take either of two courses. It may (1) turn over the contract to the person as his own property, or (2) convert it into a paid-up contract. A booklet prepared by the company and distributed to the employees soon after the pension trust went into effect explained this aspect of the pension plan as follows: "If you terminate your employment, all values in the contract issued on your life will be used for your benefit. The pension committee may advise the trustee to turn the contract over to you so that you can continue payments yourself, or the policy may be changed into a fully paid-up contract so that whatever values are in the contract may be used to provide a reduced death benefit . . ."

Thus, the employees have a vested interest, which they did not lose by resignation, in the insurance contracts on their lives, and therefore are in a position to complain of any irregularities as to the insurance.

The plaintiffs allege, with specific amounts as to one of them, that the payments by the employer on behalf of the plaintiffs were not sufficient to fund insurance on their lives with the death benefit specified by the trust agreement, and that the trustee did not purchase life insurance on the plaintiffs equal to the amount so specified.

Under these allegations, the values of the insurance contracts on the plaintiffs' lives are less than they would be if contracts in the specified amount had been purchased and paid on during the years of the plaintiffs' employment by the defendants.

Hence, they have alleged a cause of action for relief either in damages or in additional paid-up insurance so as to give them the amount they would have if insurance with the death benefit specified in the trust plan had been bought originally and maintained during the plaintiffs' employment by the defendants.

Since the petition set forth a cause of action for failure to provide life insurance with the specified death benefit, it was error to sustain the general demurrers to the petition as a whole, to counts 1 and 6, and to any portion of those counts.

*Judgment affirmed in part; reversed in part. All the Justices concur.*